[Crim. No. 5900.   Second Dist., Div. Three.   Oct. 14, 1957.]

THE PEOPLE, Respondent, v. BERTRAM S. STERLING, Appellant.

James L. Garcia for Appellant.

Edmund G. Brown, Attorney General, and Morris Schachter, Deputy Attorney General, for Respondent.

WOOD (Parker), J.—Defendant Bertram S. Sterling was convicted, in a nonjury trial, of violating section 11500 of the Health and Safety Code, in that he unlawfully had heroin in his possession. An allegation of the information that defendant had been previously convicted of violating said section was found to be true. Defendant appeals from the judgment.

Appellant asserts that the evidence was insufficient to support the judgment; the corpus delicti was not established; and the arrest, search and seizure were illegal.

Officer Burkland testified that, on the day before the arrest, he received information from an informer that a person named Bertram, who lived in room 219 of the Royal Hotel, was a user and peddler of heroin; the arrest was made on October 1, 1956, about 3:30 p. m.; on the day of the arrest (and preceding the arrest) Officer Burkland and Officers Stephenson and Barry met a second informer at the rear of the hotel, and from that place the second informer pointed out room 219 of the hotel; the second informer told them that Bertram was a user of heroin; Officer Burkland had received reliable information from the first informer on prior occasions, but he had not received information from the second informer; Officer Burkland went to room 219, knocked on the door, and stated that he was a police officer; he heard a commotion in the room, and within about 20 seconds the door was opened by Dolores

Johnson; defendant was also in the room; the window was open; when he (witness) was in the room he saw Officer Stephenson who was then standing in a parking lot (at the rear of the hotel); he (witness) saw a gold ring on defendant's right hand and he saw a silver ring upon defendant's left hand; he believed that Dolores Johnson did not have a ring on her hand; Officer Stephenson called his attention to a paper bindle within the wire enclosure (fence) at the rear of the hotel; then Officer Burkland went down to the rear of the hotel and retrieved the bindle and handed it to Officer Stephenson (who was outside the enclosure); Officers Burkland and Stephenson returned to the room where they had a conversation with defendant; defendant said that he had bought the half spoon papers from "a kin of Bluejay's" on Fifth Street about an hour before the arrest, that he bought five of them and paid between $20 and $25 for them, that he got panicky when the officers knocked on the door and he threw the papers out the window.

Officer Stephenson testified that on October 1, 1956, about 3:20 p. m., he was on a rear porch of another hotel, which porch was about 100 feet from the window of room 219 of the Royal Hotel; from that vantage point he saw a hand, with a gold ring on it, come out the window (of room 219), and he saw a white bindle fall from the hand onto the parking lot and outside a fenced enclosure; about three seconds later he saw a hand, which appeared to be the same hand, come out the window and he saw a second bindle fall from the hand to the ground inside the enclosure; he (witness) went to the place where the first object fell and picked it up; that object consisted of three bindles with a rubber band around them; he could not reach the second object because it was inside the fence; he called to Officer Burkland, who was in the room, and told him that the fellow with a gold ring on his hand threw "some stuff" out the window and that he (witness) could not reach one of the bindles; Officer Burkland came down and picked up the bindle which was inside the fence; then Officer Stephenson went into room 219 and at that time Officer Burkland, Officer Barry, the defendant, and a girl (Dolores) were in the room; the girl did not have any jewelry on her hands; the defendant had a gold ring on his right hand; Officer Burkland asked the defendant if the stuff was his; the defendant said that it was his, and that he got nervous when the officers were at the door and he threw it out the window.

The bindles contained heroin. The officers did not have a search warrant or a warrant for the arrest of defendant or anyone in the room.

Mrs. Williams (also known as Dolores Johnson), a witness called by defendant, testified that on said October 1 she resided in said room 219; a person by the name of Johnny Moore brought the heroin to that room prior to October 1; she and Moore, who were users of narcotics, had taken injections of heroin while in her room; on October 1 there was a knock on the door of her room by someone who said his name was "Bobby"; she told the person to come back later, and at that time the person started kicking on the door; then she threw the bindles of heroin out the window, and she had a silver ring on her hand at that time; the officers forced the door open; the defendant had been in the room about five minutes prior to the knock on the door; she told the officers that her name was Dolores Johnson.

Defendant testified that he had been in room 219 about five minutes when there was a beating on the door; then the girl (Dolores) ran to the window and ran back to the door; then the officers forced the door open; he (defendant) did not know there was heroin in the room; he did not throw anything out the window of that room on October 1. He testified further to the effect that, in his conversations with the officers, he said that he did not know anything about the heroin, and he did not say that the heroin was his.

Appellant asserts that the corpus delicti was not established, and therefore the court erred in receiving testimony as to the alleged admissions of defendant. ■ The corpus delicti is established by proof that a crime has been committed. In making such proof it is not necessary to prove that the defendant was connected with the commission of the crime. (*People v. Bigelow*, 104 Cal.App.2d 380, 385 [231 P.2d 881].) ■ In the present case the evidence, independent of the admissions, established the corpus delicti. There was testimony by Officer Stephenson, who was outside the hotel, that he saw someone in room 219 throw bindles out the window of that room. Also there was testimony by a chemist that the bindles (Exhibit 1) contained heroin.

■ Appellant asserts further that the evidence was insufficient to support the judgment. He argues that there was no evidence that Officer Stephenson observed the objects at all times "they were in flight" from the window; and that there was no evidence that the officer saw where the objects landed.

Counsel for defendant asked Officer Stephenson the following question: "Now, you saw a hand come out the window and throw something out, is that your testimony?" The officer replied: "Yes, sir." Then counsel for defendant asked the officer as follows: "Did you follow the object all the way down to the ground?" The officer replied: "I did." The officer also testified that a gold ring was on the hand from which the bindles fell to the ground; and that defendant was the only one in the room who had a gold ring on his hand. Furthermore, defendant said that the heroin was his and he threw it out the window. The evidence was sufficient to support the judgment.

Appellant also asserts that the arrest, search and seizure were unlawful, and therefore the heroin should not have been received in evidence. He argues that defendant was arrested when Officers Burkland and Barry entered the room and at that time Officer Stephenson, who was outside, was the only officer who could have had any knowledge that the bindles (which were then on the ground) contained narcotics, and therefore Officers Burkland and Barry did not have probable cause to believe that defendant had committed a felony. The record does not show that defendant was arrested at the time Officers Burkland and Barry entered the room. Defendant testified that the officers did not arrest him immediately when they entered the room. Defendant was asked how long the officers were in the room before they placed him under arrest. He replied: "Well, they were in the room about five or six minutes, and Officer Stephenson came up, and altogether they must have been in the room about 20 minutes or a half hour, some place around that vicinity." Officer Stephenson testified that defendant was under arrest when he (officer) entered the room. The record does not show that defendant was arrested prior to the time Officer Stephenson called to Officer Burkland and said that the fellow with a gold ring threw some stuff out the window. ■ In any event, irrespective of when the defendant was arrested, the heroin was not obtained by unlawful search and seizure. Officer Stephenson saw the bindles thrown from the window and he picked up the bindle which fell outside the fence, and he directed Officer Burkland to the other bindle which fell inside the fence, and Officer Burkland picked up that bindle. It thus appears that the officers did not obtain the bindles as a result of a search. In *People* v. *Lawton*, 150 Cal.App.2d 431 [309 P.2d 862], it was said at page 434: "There is no evidence of unlawful

search and seizure for, as above noted, the officers recovered the so-called bindle in the yard where it had been thrown." In *People* v. *Montes,* 146 Cal.App.2d 530 [303 P.2d 1064], the officers found a vial, containing marijuana, about 20 feet from the back door (outside) of the house where the defendant lived. In that case the court said at pages 533 and 534: "Entry upon a field or a driveway is not an unlawful search forbidden by the Fourth Amendment. [Citations.] Therefore, the search that revealed the glass vial containing marijuana was not prohibited." In the present case the heroin which the officers obtained from the parking lot and enclosure at the rear of the hotel was not unlawfully obtained. The court did not err in receiving the heroin in evidence.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.