[Crim. No. 1598.   Fourth Dist.   Nov. 6, 1961.]

THE PEOPLE, Respondent, v. WILLIAM EUGENE
PORTER, Appellant.

Roderick L. Dungan for Appellant.

Stanley Mosk, Attorney General, William E. James, Assist-
ant Attorney General, and Edmond B. Mamer, Deputy At-
torney General, for Respondent.

SHEPARD, J.—This is an appeal by defendant from a judgment of conviction of a violation of Penal Code section 12021 (possession of a firearm capable of concealment on the person by a felon) and a violation of Penal Code section 12020 (carrying concealed upon the person a dirk or dagger).

## FACTS

The facts shown by the record before us are substantially as follows: Defendant and his counsel and the district attorney waived a jury and the cause was tried before the judge. On stipulation, the cause was submitted on the testimony adduced at the preliminary examination plus a stipulation that the events recounted in the transcript of the preliminary hearing occurred while the officers were on routine patrol in the early morning hours.

The facts related are uncontradicted; defendant offering no evidence in his own behalf. At about 3:25 o'clock a. m. on August 16, 1960, Officers Simpson and Richey of the Ontario Police Department, were on patrol in their police car on Holt Avenue in that city when they saw defendant drive by with one companion. The officers, about 25 minutes earlier, had seen defendant drive by on the same street alone. On this second occasion they followed a short distance and turned on the red light. The passenger immediately slid down in the seat as though placing something under the seat or on the floor. Defendant pulled up to the curb. The officers and defendant stepped out of the cars. The officers requested identification. The passenger could not get out due to curb obstruction. The car was moved for that reason. As the passenger opened the door the officer, from a position outside the car, directed his flashlight into the car and saw the barrel of a pistol protruding from under the seat. The officer reached in and retrieved it. It proved to be a 22-caliber pistol. Defendant then pleaded for the officers to give him a "break," saying he had borrowed the gun from a friend and had been out target practicing with it. Defendant and the passenger were placed under arrest. At police headquarters they were searched. Defendant was carrying, concealed in his right rear pocket, a black-handled kitchen knife, sharpened on both sides to the point, thus forming a dagger. Certified copies of records showing prior felony convictions against defendant for the federal offense of smuggling marijuana into the United States, and of forgery and second degree burglary were placed in evidence. The defendant did not take the

witness stand. The court found him guilty on both counts of the information. A probation report was made. Probation was denied. Defendant was sentenced to concurrent terms on both counts, and appeals.

## STOPPING THE AUTOMOBILE

Defendant's sole point on appeal is his contention that the search of the automobile was without probable cause and that therefore the evidence on the illicitly possessed gun and knife was improperly admitted. He divides his argument into three parts. First, he contends the officers had no lawful authority to stop defendant's automobile because the officers saw no circumstances of such a suspicious nature as to warrant a search thereof.

It must be remembered that the routine stopping of a motorist for identification and checking for ownership and compliance of the vehicle with the law is quite a different matter from a search for contraband. ■ What this court has recently said on the subject bears repetition:

" 'Whether an officer has a right to stop a car and interrogate the occupant is an issue quite separate from whether he has a right to stop the car and to arrest the occupant and conduct a search.' [Citations.]

■ "The courts of this state consistently have adhered to the proposition that a police officer may question a person outdoors at night when the circumstances are such as would indicate to a reasonable man in like position that such a course is necessary to the discharge of his duties." (*People* v. *Ellsworth*, 190 Cal.App.2d 844, 846 [2-3] [12 Cal.Rptr. 433]; *People* v. *Davis*, 188 Cal.App.2d 718, 722 [3] [10 Cal. Rptr. 610]; *People* v. *King*, 175 Cal.App.2d 386, 390 [3] [346 P.2d 235].)

## SEARCH AND SEIZURE

■ What the officers saw to make them suspicious prior to the time the officer, from outside the car, saw the barrel of the pistol protruding from underneath the seat, was not gone into in detail and it was not necessary to do so. Up to that time there had been no arrest and no search. The pistol barrel was in plain sight. Seeing it from outside the car was not a search. (*People* v. *Carnes*, 173 Cal.App.2d 559, 566 [3] [343 P.2d 626]; *People* v. *Linden*, 185 Cal.App.2d 752, 757 [3] [8 Cal.Rptr. 640] and cases there cited.) ■ Once the officer saw the pistol barrel he clearly had reasonable cause for search and seizure. (Pen. Code, § 833; *People* v.

*Martin,* 46 Cal.2d 106, 108 [2] [293 P.2d 52]; *People* v. *Linden, supra, People* v. *Davis, supra,* p. 780 [4-6].) The search of the car was clearly lawful. None of the authorities cited by plaintiff announce any contrary rule under this type of circumstance.

The arrest was lawful. (Pen. Code, § 836, subd. 1; *People* v. *Murphy,* 173 Cal.App.2d 367, 377 [22, 23a] [343 P.2d 273].) ■ Search as an incident of lawful arrest produced the dagger. It was properly admitted in evidence. (Pen. Code, § 833; *People* v. *Coleman,* 134 Cal.App.2d 594, 599 [8] [286 P.2d 582].)

We find no merit in any of the defendant's points on appeal. The judgment is affirmed.

Griffin, P. J., concurred.