[Crim. No. 13935. Second Dist., Div. One. Feb. 23, 1968]

THE PEOPLE, Plaintiff and Respondent, v. RUDY PEREZ, Defendant and Appellant.

Bruce A. Toor, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, and Carl Boronkay, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—On December 13, 1963, defendant entered a plea of guilty to possession of marijuana (§ 11530, Health & Saf. Code) in case 280040; on January 10, 1964, he was granted probation for three years.

In a subsequent case, 296630, defendant was charged with possession of marijuana and the cause was submitted on the transcript of the testimony taken at the preliminary hearing; on January 29, 1965, he was found guilty. On February 19, 1965, defendant having deserted probation in case 280040 the same was revoked, and in both cases he was remanded to custody as being in imminent danger of becoming addicted, and later paroled.

On December 16, 1966, defendant was arrested for forgery (§ 470, Pen. Code) to which he entered a plea of guilty; on March 14, 1967, he was sentenced to the state prison (case A-217120).

On June 2, 1967, in case 280040, defendant was sentenced to the state prison, the sentence to run concurrently with that imposed in case A-217120 (forgery) on March 14, 1967; in

case 296630 defendant was sentenced to the state prison, the term to run consecutively to those imposed in cases 280040 and A-217120. Defendant appeals from the judgment and sentence in 280040 and 296630.

 In case 280040, defendant entered a plea of guilty; absent from the record are written sworn statement of defendant and certificate of probable cause (§ 1237.5, Pen. Code). Thus, appeal taken from the judgment of conviction upon the plea of guilty is dismissed.

On November 6, 1964, responding to a call that there was a fight in a parking lot between Caucasian and Mexican youths in which one of the Mexican youths pulled a pistol and pointed it but fired no shot, Officers Bailey and McClendon arrived at the Magnolia parking lot around 11:30 p.m. They observed no fight but saw four Mexican youths hurriedly get into an automobile. Defendant sat in the rear to the right. Officer Bailey asked the driver his name and if they were the ones who had been fighting. The driver said his name was Triana and they were not but he had heard of trouble and pointed his thumb to the east. Officer Bailey asked him if he had a gun in the car; Triana said, "Go ahead and look." Without reaching into the vehicle the officer directed his flashlight into the car and saw a brown paper bag containing a 6-pack of beer. He asked whether they had been drinking and had beer in the car; Triana said they had. Then the officer asked if they had any weapons, to which Triana replied, "No, go ahead and look," whereupon all occupants voluntarily got out of the car; they were not ordered to get out. As the driver stepped out Officer Baley directed his flashlight onto the floor of the car, and in plain sight on the front floorboard on the driver's side was a "roach" ¼ inch long. The officer advised all of the occupants of their constitutional rights and placed them under arrest; at this time defendant looked "abnormal," his eyes were watery and bloodshot and he appeared to be "under the influence" although the officer smelled no alcohol on his breath. A search of the vehicle revealed on the right rear floorboard debris including numerous marijuana seeds, one of which was burned. After defendant was booked and found to be without identification, Officer McClendon returned to the police car in which defendant had been transported and found his wallet in which were two marijuana cigarettes.

 Appellant's present objection that there was no probable cause for his arrest is not timely made. The case was

submitted to the trial judge on the transcript of the testimony taken at the preliminary hearing. The record shows that when the exhibits were offered in evidence defendant made an objection, but "on the ground there is no probable cause for the officers to search the vehicle." When the committing magistrate overruled the objection defendant moved to dismiss "on the same ground"; the motion was denied. At the trial level in submitting the cause defendant stipulated "that the People's Exhibits 1, 1-A, 1-B, 1-C, 1-D and 1-E which were introduced into evidence at that time are considered reintroduced into evidence at this trial subject to any legal objection as to their admissibility. . . ." Thus, had defendant any real objection to the admissibility of the exhibits on the ground that the search was unlawful he did not call it to the attention of the trial court and give it the opportunity to rule thereon; neither did he raise the issue of the validity of his arrest. In the absence of such objection the trial judge was entitled to rely upon the stipulation that the People's case was submitted on the testimony received at the preliminary hearing. (*People* v. *Graves*, 84 Cal.App.2d 531, 535 [191 P.2d 32]; *People* v. *Miller*, 205 Cal.App.2d 116, 121-122 [22 Cal. Rptr. 786].)

At no time, before the committing magistrate or in the trial court, did defendant object to the admissibility of the exhibits on the ground that there was no probable cause for his arrest. This is of no significance insofar as Exhibits 1, 1-A and 1-B are concerned since they consist of the "roach" found on the front floorboard of the vehicle and the marijuana debris, including seeds, one burned, found on the right rear floorboard of the car. The "roach" and marijuana debris are the product of a search to which consent was given. The propriety of the search of the vehicle depends entirely upon that consent, not upon the validity of defendant's arrest. Officer Bailey testified that twice Triana told him to "go ahead and look" in the car and, to facilitate the search by the officers, the four occupants voluntarily stepped out of the vehicle. In overruling defendant's objection to the admissibility of the exhibits and denying the motion to dismiss, the ground of which was "no probable cause for the officers to search the vehicle," the committing magistrate found that voluntary consent to search the car had been given. The determination of the credibility of witnesses at a preliminary hearing is a matter within the province of the committing magistrate. (*De Mond* v. *Superior Court*, 57 Cal.2d 340, 345 [19

Cal.Rptr. 313, 368 P.2d 865]; *People* v. *Brown,* 205 Cal.App. 2d 188, 192-193 [22 Cal.Rptr. 835]; *Rideout* v. *Superior Court,* 67 Cal.2d 471, 473, fn. 2 [62 Cal.Rptr. 581, 432 P.2d 197].) The trial judge accepted this determination of voluntary consent to search; we have no reason to reject the trial judge's conclusion.

Thus, it is of no consequence that in neither court did defendant make objection to the admissibility of People's Exhibits 1, 1-A and 1-B on the ground that there was no probable cause for his arrest, but it is of importance that he did not interpose such objection to the admissibility of People's Exhibits 1-C, 1-D and 1-E. Primarily these exhibits consist of the two marijuana cigarettes found in defendant's wallet recovered by the officers from the back seat of the police vehicle used in transporting defendant, after his arrest, to the station. Here, if defendant's arrest was invalid for lack of probable cause, the marijuana cigarettes would have been inadmissible; however, the record before us establishes that Officer Bailey had reasonable cause to believe that defendant had committed a felony (possession of marijuana) before arresting him.

 Around midnight the officers responded to a call informing them of a fight involving some Mexican youths and that one of them had pulled a pistol and pointed it; when they arrived they saw four Mexican boys hurriedly getting into a car; the officer queried them concerning the fight and if they had a gun. When there are suspicious circumstances there is nothing improper about an officer stopping persons out of doors at night for the purpose of investigation and to question them (*People* v. *Mickelson,* 59 Cal.2d 448, 450 [30 Cal.Rptr. 18, 380 P.2d 658]; *People* v. *Davis,* 222 Cal.App.2d 75, 78 [34 Cal.Rptr. 796]; *People* v. *Blodgett,* 46 Cal.2d 114, 117 [293 P.2d 57]; *People* v. *Martin,* 46 Cal.2d 106, 108 [293 P.2d 52]; *People* v. *Michael,* 45 Cal.2d 751, 754 [290 P.2d 852]); and the circumstances here, while short of probable cause to make an arrest, justified such action. (*People* v. *Mickelson,* 59 Cal.2d 448, 450 [30 Cal.Rptr. 18, 380 P.2d 658].) Asked if they had any weapons in the car, the driver told the officer, "No, go ahead and look," whereupon all of the occupants voluntarily stepped out of the car. As the driver got out, the officer directed his flashlight to the floorboard in the front of the car and in plain sight on the left was a "roach." Actually this did not constitute a search since the "roach" was open to view. (*People* v. *Terry,* 61 Cal.2d 137,

152 [37 Cal.Rptr. 605, 390 P.2d 381]; *People* v. *Roberts,* 47 Cal.2d 374, 379 [303 P.2d 721]; *People* v. *Martin,* 45 Cal.2d 755, 762 [290 P.2d 855].)

■ Appellant's argument that his mere presence in the vehicle in which a "roach" was found does not constitute probable cause to arrest him, ignores the other evidence. The testimony of Officer Bailey establishes that he did not arrest defendant until *after* he had advised him of his constitutional rights. While Officer Bailey testified that "at this time" defendant looked abnormal and appeared to him to be under the influence and his eyes were watery and bloodshot, it is a fair conclusion from all of the evidence that before arresting defendant and when he gave him his constitutional rights, the officer was able to and did observe defendant's condition and appearance. This was the interpretation given to the officer's testimony by the committing magistrate and accepted by the trial judge. While it is not clear from Officer Bailey's testimony whether the marijuana debris in the rear of the car where defendant had been sitting was observed prior to his arrest,[1] the following question on redirect, "In other words, you were made aware there had been more marijuana recovered before Perez was put under arrest?" was answered by

---

[1]On recross-examination Officer Bailey was asked the following questions and gave the following answers:
"Q When did you advise Mr. Perez of his rights?
A Immediately after observing the marijuana in the vehicle.
Q Where in the vehicle [is] it that you observed marijuana?
A I observed the quarter inch brown paper hand-rolled, what appeared to be marijuana roach, laying in the front left center of the vehicle . . . However, there was marijuana recovered numerous other places in the vehicle."
On redirect-examination:
"Q Officer, exactly when did you put the defendant Perez under arrest?
A After there was some marijuana, or what appeared to be marijuana, recovered in the vehicle and after they had been advised of their rights.
"Q In other words, you were made aware there had been more marijuana recovered before Perez was put under arrest?
A That is correct.
Q Did anybody tell you where it had been recovered in the vehicle?
A Yes.
Q Where was it?
A Officer McClendon informed me he had found another marijuana roach in the front ashtray of the defendant's vehicle, and I personally recovered marijuana, of what appeared to be marijuana debris on the right rear of the vehicle."
Then the officer was asked, "This marijuana debris you recovered on the right rear, was that before or after the defendant was placed under arrest?" and he answered, "At this time I believe after he was placed under arrest."

the officer, "That is correct." However, without considering the marijuana debris found in the right rear of the vehicle, at the time Officer Bailey arrested defendant he had seen the "roach" in the front of the vehicle and defendant looked "abnormal," his eyes were watery and bloodshot and he appeared to be "under the influence" although the officer smelled no alcohol on defendant's breath. From this it could reasonably be inferred that defendant had joint possession of the marijuana cigarette and knowledge of its presence in the vehicle. (*Rideout* v. *Superior Court,* 67 Cal.2d 471, 474-475 [62 Cal.Rptr. 581, 432 P.2d 197].) Faced with the above circumstances, Officer Bailey had reasonable cause to believe that defendant had committed a felony, and properly arrested him. (§ 836, Pen. Code; *People* v. *Torres,* 56 Cal.2d 864, 866 [17 Cal.Rptr. 495, 366 P.2d 823]; *People* v. *Fischer,* 49 Cal.2d 442, 446 [317 P.2d 967]; *People* v. *Ingle,* 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577].) ■ "To constitute probable cause for arrest, a state of facts must be known to the officer that would lead a man of ordinary care and prudence to believe, or to entertain a strong suspicion, that the person arrested is guilty." (*People* v. *Hillery,* 65 Cal.2d 795, 803 [56 Cal.Rptr. 280, 423 P.2d 208]; *People* v. *Stewart,* 62 Cal.2d 571, 577-578 [43 Cal.Rptr. 201, 400 P.2d 97]; *People* v. *Cockrell,* 63 Cal.2d 659, 665 [47 Cal.Rptr. 788, 408 P.2d 116]; *Rideout* v. *Superior Court,* 67 Cal.2d 471, 473-474 [62 Cal.Rptr. 581, 432 P.2d 197].)

Appellant relies upon *People* v. *Redrick,* 55 Cal.2d 282 [10 Cal.Rptr. 823, 359 P.2d 255], *People* v. *Jackson,* 198 Cal.App. 2d 698 [18 Cal.Rptr. 214], and *People* v. *Foster,* 115 Cal. App.2d 866 [253 P.2d 50], none of which involves the question of probable cause, but affirms judgments of conviction of possession of narcotics; they hold that proof of opportunity of access to a place where narcotics are found, without more, will not support a finding of unlawful possession. Here the question is not whether the evidence will support such a finding but whether there is probable cause. Defendant not only had an opportunity of access to the marijuana cigarette but his condition and appearance indicated to the police officers that indeed he actually had it in his possession. *People* v. *Estrada,* 234 Cal.App.2d 136 [44 Cal.Rptr. 165, 11 A.L.R. 3d 1307], relied upon by appellant in his closing brief, while involving the issue of probable cause, is not helpful to him for the factual situation is not comparable to the one at bar.

■ Likewise untimely is appellant's complaint that no

foundation was laid to show that Officer Bailey was a qualified expert through training and experience capable of detecting and identifying marijuana by its appearance, thus the officer's identification of the cigarette as a "roach" was not proper. No objection to the officer's testimony was made either before the committing magistrate or the trial judge. (*People* v. *Newberry*, 204 Cal.App.2d 4, 9 [22 Cal.Rptr. 23].) In any event, it seems to be of little importance for narcotics offenses are common in this area and it may properly be assumed that the detection and identification of marijuana are part of a police officer's routine training. ▪ Nor is there validity to the assertion that "it was incredible that Officer Bailey could recognize a marijuana roach" which was only one-fourth of an inch long with other debris in the vehicle by flashlight. The weight and the effect of the evidence is for the trial judge and not this court. (*People* v *Redrick*, 55 Cal.2d 282, 284 [10 Cal.Rptr. 823, 359 P.2d 255]; *People* v. *Huston*, 21 Cal.2d 690, 693 [134 P.2d 758].)

Finally, appellant asks this court to modify the judgment to order the term of imprisonment in case 296630 to run concurrently with that imposed in the prior case, 280040, on the ground that the judge failed to comply with the requirements of section 669, Penal Code.[2]

In case 280040 (possession of marijuana) defendant entered his plea of guilty on December 13, 1963; he was placed on probation on January 10, 1964. In case 296630, defendant was found guilty of possession of marijuana on January 29, 1965.

---

[2]Section 669, Penal Code, provides: "When any person is convicted of two or more crimes, . . . the second or other subsequent judgment shall direct whether the terms of imprisonment or any of them to which he is sentenced shall run concurrently, or whether the imprisonment to which he is or has been sentenced upon the second or other subsequent conviction shall commence at the termination of the first term of imprisonment to which he has been sentenced, or at the termination of the second or subsequent term of imprisonment to which he has been sentenced, as the case may be; . . . In the event that the court at the time of pronouncing the second or other judgment upon such person had no knowledge of a prior existing judgment or judgments, or having knowledge, fails to determine how the terms of imprisonment shall run in relation to each other, then, upon such failure so to determine, or upon such prior judgment or judgments being brought to the attention of the court at any time prior to the expiration of 60 days from and after the actual commencement of imprisonment upon the second or other subsequent judgments, the court shall in the absence of the defendant and within 60 days of such notice, determine how the term of imprisonment upon said second or other subsequent judgment shall run with reference to the prior incompleted term or terms of imprisonment. Upon the failure of the court so to determine how the terms of imprisonment on the second or subsequent judgment shall run, the term of imprisonment on the second or subsequent judgment shall run concurrently."

On February 19, 1965, in both cases (280040 and 296630) defendant was remanded as in imminent danger of becoming addicted. After his parole he was arrested for forgery, case A-217120, and on March 14, 1967, on his plea of guilty, defendant was sentenced to the state prison. Thereafter on June 2, 1967, in case 280040, defendant was sentenced to the state prison, the term to run concurrently with that imposed on March 14, 1967, in case A-217120; and in case 296630, defendant was sentenced to the state prison, the term to run consecutively to that imposed in case 280040.

 In connection with the judgment and sentence in case 296630, appellant claims first that under section 669, Penal Code, on the *day* he was convicted of possession of marijuana, January 29, 1965, the trial court had the duty to specify whether his term of imprisonment would be served consecutively to or concurrently with his prior sentences, which the court did not do. To support his contention, appellant construes the word "when" as used at the beginning of section 669, Penal Code—"When any person is convicted"— to mean "on the day" any person is convicted, which, in case 296630, would be January 29, 1965; thus, he argues that on January 29, 1965 (not June 2, 1967), the trial judge was required to make the determination. If appellant's construction of the word "when" is correct, section 669 would require the judge, on the day he finds a defendant guilty, to determine how his sentence shall run in relation to any prior judgment. This could not have been intended by the Legislature for at the time a defendant is convicted, in all probability the judge has no way of knowing, in the absence of a probation report, first, whether he will impose a term of imprisonment and, if so, whether it should run consecutively to any prior judgment. Thus, we give the word "when" as used in section 669 the only fair and reasonable construction possible, to mean "after" or "following." In *People* v. *Hale,* 156 Cal.App.2d 478, 480 [319 P.2d 660], a similar construction was given to the word "when" as used in section 976, Penal Code, which provides, "When the accusatory pleading is filed, the defendant must be arraigned thereon before the court. . . ." In *Hale* the trial judge ordered the proceedings dismissed because defendant was not present on the day of the filing of the information and not arraigned at that time. Reversing the order the court said, "The word 'when' as used in section 976 should not be given such a narrow construction as to require that the defendant

be present when the information is filed. . . . We are satisfied that the construction placed upon section 976 by the trial court was clearly not within the intent of the Legislature, and that such a construction would be contrary to the established practice in the various counties of California of having the district attorney file the information with the clerk of the superior court and having the matter set for arraignment. Such a construction is not a reasonable construction of the statute and it is not required to protect any rights of the defendant. We believe that by the use of the word 'when' in section 976 the Legislature meant 'after' or 'following' the filing of the information.'' (P. 481.) ▮ In rejecting appellant's narrow construction we conclude that under section 669 it was the trial court's duty on June 2, 1967, to direct whether the term of imprisonment imposed by it shall be served consecutively to or concurrently with that previously imposed in case 280040; this it did by ordering the term to run consecutively. ▮ This also disposes of appellant's claim that on March 29, 1965—60 days after the day he was convicted, January 29, 1965—the court should have made the determination required under section 669, and that at the time he was sentenced on June 2, 1967 ''imprisonment'' had already commenced by virtue of his 1965 commitment to the Department of Corrections as being in imminent danger of becoming addicted to narcotics. While in determining the ''60 days from and after the actual commencement of imprisonment'' we think the word ''imprisonment'' refers not to the time defendant may spend in custody after he has been found guilty pending sentence but to the term of imprisonment imposed on the second or subsequent judgments, we deem further discussion of the point to be unnecessary.

The judgment in case 296630 is affirmed. ▮ Affirmance of the judgment carries with it affirmance of the sentence. (*People* v. *Smith*, 164 Cal.App.2d 510, 514 [330 P.2d 678].) The appeal in case 280040 is dismissed.

Wood, P. J., and Fourt, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 17, 1968.